1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ALAN HAMMERSMITH ROSE,      )
                         )    CV-N-05-0522-HDM (VPC)
        Plaintiff,    )
                         )
    vs.               )    **REPORT AND RECOMMENDATION**
                         )    **OF U.S. MAGISTRATE JUDGE**
CHASE MANHATTAN BANK USA,    )
    ET AL.,           )
        Defendants.    )    May 8, 2006
_____)

        This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendant's motion to compel arbitration (#14).  Plaintiff opposed (#19-1), and defendant replied (#22).

        The court has thoroughly reviewed the record and the motion and recommends that defendant's motion be granted.

**I.  HISTORY & PROCEDURAL BACKGROUND**

        Plaintiff Alan Hammersmith Rose ("plaintiff"), a Nevada resident, filed a complaint against Chase Manhattan Bank, USA ("defendant"), a Delaware corporation, and Does 1 through 100 relating to a dispute over credit card charges on his Chase account (#4).  Plaintiff married several years after he opened his Chase account, and he claims that his wife was never an authorized user of the account.  *Id*.  He contends that during divorce proceedings his wife charged her attorney's fees to plaintiff's credit card without his knowledge.  *Id*.  Plaintiff advised defendant that he had not made the charges.  *Id*.  Defendant investigated the fraud claim and

ultimately informed plaintiff that he was responsible for the charges. *Id*. Plaintiff's complaint sets forth the following claims: (1) fraudulent misrepresentation; (2) intentional and negligent infliction of emotional distress; (3) negligence; (4) outrage; (5) defamation of credit; and (6) violations of the Fair Credit Reporting Act, 15 U.S.C. 1681. *Id*. This court has jurisdiction based on diversity pursuant to 28 U.S.C. § 1332; and based on the Federal Fair Credit Reporting Act, 15 U.S.C. 1681. *Id*.

Defendant moves to compel arbitration pursuant to the cardmember agreement's arbitration clause (#14).

## II. DISCUSSION & ANALYSIS

### A. Choice of law

### 1. Discussion

State law applies in determining the validity or enforceability of an arbitration clause. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996); *Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 281 (1995). Parties have wide latitude to choose the law that will determine the validity and effects of their contract. *Ferdie Sievers & Lake Tahoe Land Co., Inc. v. Diversified Mtg. Investors*, 603 P.2d 270, 273 (Nev. 1979). "It is well settled that the expressed intention of the parties as to the applicable law in the construction of a contract is controlling if the parties acted in good faith and not to evade the law of the real situs of the contract." *Id*. The situs set by the agreement must have a substantial relation with the transaction and the agreement must not contravene public policy. *Id*. Here, the cardmember agreement contains a choice of law provision that states: "Law That Applies: The laws of the United States of American and the State of Delaware apply to this Agreement and to your use of your Card, your Checks and your Account (#16 at ¶ 6).

2

1
2
3
4
5
6

In *Sievers*, the court held that the choice of law provision applying the state law of a foreign jurisdiction was enforceable against a Nevada resident. *Sievers*, 603 P.2d at 273. The court noted that the respondent transacted business throughout the country and that applying the law of the state where the business was centralized and where documents were prepared, executed and processed facilitated consistency and predictability. *Id*.

7
8
9
10
11
12
13
14
15

Applying the choice-of-law test in *Engel v. Ernst*, the Nevada Supreme Court upheld a choice of law provision that disputes be governed by Colorado law because no evidence showed that the party acted in bad faith or sought to evade the laws of Nevada. 724 P.2d 215, 217 (Nev. 1986). The court observed that: "[appellant] was a national accounting firm with its partners located in different offices around the country. It is understandable that [appellant] would attempt to choose a set of laws to govern the partnership relationship; otherwise, if [appellant] were required to satisfy the nuances of various state's laws, there would be non-uniform enforcement of its partnership agreements." *Id*.

16

**2. Analysis**

17
18
19
20
21
22
23
24
25
26
27

While the cardmember agreement designated that Delaware law would govern the contract, plaintiff contends that Delaware does not have a significant relationship to this action (19-1). Plaintiff notes that he is a Nevada resident who entered into his credit card contract in Nevada; he receives and makes payments on his bills in Nevada; and the credit card is physically located in Nevada. *Id*. Plaintiff argues, without elaboration, that although Chase is located in Delaware, Delaware has a much less significant relationship to plaintiff's claims than Nevada. *Id*. Finally, plaintiff asserts that applying Delaware law to this action would violate Nevada public policy because the result would be a unilateral waiver of plaintiff's constitutional right to a jury trial. *Id*.

28

Defendant responds that as in *Sievers* and *Engel*, there is no evidence that it acted in bad faith or attempted to evade Nevada law (#22).   Defendant contends that Delaware has a substantial relationship to the transactions and the agreement because Chase is a national bank with its headquarters in Delaware.  *Id.*  Defendant emphasizes that its cardholders are located throughout the United States, the cards can be used worldwide, and therefore, Chase chose the law of the state of its headquarters in order to provide some uniformity to the interpretation and enforcement of its cardmember agreement.  *Id.*

The court finds that the validity of the parties' agreement to arbitrate should be analyzed under Delaware law.  The law of Delaware is designated as the choice of law in the cardmember agreement (#15).  *Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196, 1201 (C.D. Cal. 2006) (following the contractual choice of law clause in determining the enforceability of an arbitration clause).  This provision is valid under Nevada law.  *See, e.g., Pentax Corp. v. Boyd*, 904 P.2d 1024, 1026 (Nev. 1995).  No public policy concerns are raised by this contract action, and Delaware law is substantially related to this suit in that defendant has its headquarters in Delaware.  *Id.*  Here, as in both *Sievers* and *Engel*, in this case there is no evidence that defendant acted in bad faith to avoid the laws of Nevada; and further, selecting the law of the state where defendant has its headquarters promotes uniformity and predictability in enforcing the cardmember agreement.  *Sievers*, 603 P.2d at 273; *Engel*, 724 P.2d at 217.

**B.  Arbitration agreement**

**1.  Discussion**

**a.  Federal and state law favoring arbitration**

The Federal Arbitration Act ("FAA") provides that "[a] written provision . . . in a contract evidencing a transaction involving commerce to settle by arbitration an existing controversy

4

arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA governs arbitration agreements made in interstate commerce and also prohibits a state from "requir[ing] a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland v. Keating*, 465 U.S. 1, 10 (1984). Congress enacted the FAA for the purpose of "revers[ing] the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000). The FAA embodies a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 25; *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).

Delaware law strongly favors enforcement of arbitration agreements; the Delaware Supreme Court declared that "the public policy of this state favors the resolution of disputes through arbitration." *Graham v. State Farm Mutual Auto Insurance Co.*, 565 A.2d 908, 911 (Del. 1998); *see also SBC Interactive, Inc. v. Corporate media Partners*, 714 A.2d 758, 761 (Del. 1998).

### b. Cardmember agreement

The cardmember agreement provides that defendant may amend the agreement after providing plaintiff with notice and opportunity to reject the amendments (#14). The agreement states in bold:

> Amendments to this Agreement: We can amend any of the terms Agreement at any time, and we can set the effective date for any such amendment . . . We can obtain your consent

to any such amendment in one of two ways, as selected by us and disclosed to you without notice of change of terms.  Under one method, you consent to the amendment if: 1) within 30 days after we mail you notice of the change, you do not give us written notice rejecting the change at the address we provide; or 2) you use your Account after 30 days from the date we mail you notice of the change, regardless of whether you give us notice rejecting the change."

*Id.*

In March 2002, defendant notified its customers, including plaintiff, that the cardmember agreement had been amended to include a provision for the arbitration of claims.  *Id.*  The arbitration agreement provides that it shall be governed by the FAA and that it covers any claims arising from or relating in any way to the credit card account that do not fall under the "small claims exception" for claims seeking less than $25,000.[1]  *Id.*

**c. Delaware law on amending agreement**

Delaware law provides that "a bank may at any time and from time to time amend [an agreement governing a revolving credit plan] in any respect, whether or not the amendment or the subject of the amendment was originally contemplated or addressed by the parties or is integral to the relationship between the parties."  5 Del. C. § 952.  The Delaware statute prescribes that such amendment may include the addition of "arbitration or other alternative dispute resolution mechanisms."[2]  *Id*.  Recently, a U.S. District Court in Kansas considered a similar dispute over enforcing a credit card agreement with a Delaware choice of law provision to which an arbitration clause was added.  *Jaimez v. MBNA America Bank, N.A.*, 2006 WL 470587 at *3 (D. Kan. Feb. 27, 2006).  In *Jaimez*, the court stated that plaintiff did not dispute that she had entered into a

---

[1]The full text of the arbitration agreement appears in the motion to compel arbitration (#14) and Declaration of Donna Barrett, Chase Senior Director of Marketing (#15).

[2]Defendant points out that Nevada law also provides that a credit card issuer "may unilaterally change any term or condition for the use of a credit card without prior written notice to the cardholder." NRS 97A.140.

credit card agreement, that defendant mailed the proposed amendment adding an arbitration agreement to her billing address, and that she failed to reject the proposed amendment. *Id*. The court found that "[f]ailure to comply with the terms of the opt-out provision and continued charges to the account operate as acceptance of the arbitration amendment under Delaware law. *Id*.

## 2. Analysis

Plaintiff acknowledges that pursuant to the FAA a contractual provision to arbitrate is valid except on such grounds which exist at law or equity for the revocation of any contract (#19-1). First, plaintiff argues that defendant lost or destroyed the original cardmember agreement, and therefore, it is impossible to ascertain whether the parties entered into a valid agreement to arbitrate (19-1).[3] Plaintiff also emphasizes that there was no notice of an arbitration provision when he entered into the cardmember agreement and argues that adding such a provision was not within his reasonable expectations. *Id*. Plaintiff mainly relies on an unreported Eastern District of Pennsylvania case, *Perry v. Fleet Boston Financial Corp.*, 2004 WL 1508518 (E.D. Penn. 2004), and a New Jersey Superior Court case, *Discover Bank v. Shea*, 827 A.2d 358 (N.J. Super. Ct. 2001), which has subsequently been called into question. *Muhammad v. County Bank of Rehoboth Beach*, 877 A.2d 340, 355 (N.J. Super. Ct. 2005). The courts in both cases refused to enforce arbitration agreements that were added by amendment to credit card agreements because

---

[3]Plaintiff argues that defendant admitted in discovery that it was unable to locate the original documents that plaintiff signed to enter into the cardmember agreement (#19-1). Plaintiff cites a Nevada Supreme Court case, which has been withdrawn, for the proposition that this court must assume that defendant lost or destroyed the original agreement and therefore cannot establish the existence of a binding agreement to arbitrate. *Id.*, citing *Bass-Davis v. Davis*, 117 P.3d 207, 211 (Nev. 2005) (*opinion withdrawn by Bass-Davis v. Davis*, 2005 WL 3968124 (Nev. Dec. 13, 2005)). Defendant responds that it already has produced the cardmember agreement (#15, Ex. A) and that the document request actually sought plaintiff's application for a credit card (#22). Defendant asserts that it is unknown whether an application ever existed because plaintiff could have applied for a credit card via telephone or internet and that, in any event, the application is irrelevant to this dispute. *Id*.

1   the courts found that the change in terms provisions of the original agreements were reasonably

2   limited to terms previously contemplated by the original agreement. *Perry*, WL 1508518 at *4;

3   *Shea*, 827 A.2d at 366.

4           Defendant emphasizes that the cardmember agreement was sent to plaintiff with the credit

5   card, he used the card, he made payments on the account, he did not opt-out of the arbitration

6   provision, and he used the card and made payments on the account after the arbitration provision

7   was added (#14).  Defendant points out that Delaware law specifically allows this type of

8   agreement to be amended in any respect, regardless of whether the type of amendment was

9   originally contemplated by the parties (#22; 5 Del. C. § 952).  Defendant also distinguishes both

10  *Perry* and *Shea*, noting that in *Perry* the court stated that it was crucial that the plaintiffs had

11  stopped using their credit cards before the amendment went into effect and that in *Shea*, the bank

12  sought to retroactively amend its credit card agreement to block the cardholder from participating

13  in a class action.  *Perry*, WL 1508518 at *5; *Shea*, 827 A.2d at 367.

14          The court concludes that the motion to compel arbitration should be granted.  Plaintiff

15  offers no evidence to support his allegations that the arbitration clause is unenforceable either at

16  law or equity.  *See Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 817 (11th Cir. 1993)

17  ("party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was

18  reached and must offer some evidence to substantiate the denial").  Federal law and Delaware law

19  (as well as Nevada law) favor the enforcement of arbitration agreements.  The amendment to the

20  cardmember agreement adding the arbitration provision is clearly allowed under Delaware law.

21  Del. C. § 952.  Plaintiff did not use the opt-out provision and he continued to use his credit card

22  after the arbitration provision went into effect (#15, ¶¶ 9-11).  The court disagrees that the

23  provision deprives plaintiff of a constitutional right to a jury trial on his claims because the right

8

to a jury trial is only implicated once it is determined that litigation should proceed.  *See Cremin v. Merrill, Lynch, Pierce, Fenner & Smith Inc*., 957 F.Supp. 1460, 1471 (N.D. Ill. 1997). Accordingly, the motion to compel is granted.

### III.  CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not demonstrated that the arbitration provision of the cardmember agreement should not be enforced.  Therefore, defendant's motion to compel arbitration (#14) is granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendant's motion to compel arbitration (#14) be **GRANTED**.

**DATED**: May 5, 2006.

_____
**UNITED STATES MAGISTRATE JUDGE**